## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL STINSON, *Plaintiff*, v. SAINT VINCENT'S HOSPITAL, *et al.*, *Defendants*. | No. 3:20-cv-00704 (VAB) |

### RULING AND ORDER

Michael Stinson ("Plaintiff"), is currently confined at Carl Robinson Correctional Institution in Enfield, Connecticut. He has filed a Complaint naming Saint Vincent's Hospital, the Bridgeport Police Department, Dr. John Doe 1 ("Dr. Doe 1"), Hospital Security Guard John Doe 2 ("Security Guard Doe 2"), Hospital Security Guard John Doe 3 ("Security Guard Doe 3"), Hospital Security Guard John Doe 4 ("Security Guard Doe 4"), and Bridgeport Police Officer John Doe 5 ("Police Officer Doe 5") as defendants (collectively, "Defendants"). The allegations asserted against the Defendants arise from an incident that occurred on March 18, 2018, at Saint Vincent's Hospital in Bridgeport, Connecticut.

For the reasons set forth below, the Complaint is **DISMISSED** in part, and only the Fourteenth Amendment claim of deliberate or reckless indifference to medical needs against Police Officer John Doe 5 in his individual capacity remains. All other claims in the Complaint are **DISMISSED**.

Mr. Stinson will have until **September 9, 2022** to discover the first and last name of Defendant Bridgeport Police Officer John Doe 5 and to file a notice with the Clerk of Court indicating the first and last name of this Police Officer. The Court will dismiss the claim against

1

Defendant Bridgeport Police Officer Doe 5 if Mr. Stinson does not provide a written notice indicating the Defendant's first and last name by **September 9, 2022**

## I.      FACTUAL BACKGROUND

On or about March 17, 2018, Mr. Stinson allegedly had a motor vehicle accident and sustained unspecified injuries. Compl. at 3, ¶ 9, ECF No. 1 (May 21, 2020) ("Compl."). On March 18, 2018, Mr. Stinson allegedly sought medical treatment for his injuries in the emergency room at Saint Vincent's Hospital in Bridgeport, Connecticut. *Id.* at 3, ¶ 10. A physician working in the emergency room, Dr. Doe 1, allegedly refused to examine or evaluate Mr. Stinson but indicated that he would renew Mr. Stinson's prior prescription for pain medication. *Id.* at 3, ¶ 11. When Dr. Doe 1 allegedly handed Mr. Stinson the prescription, Mr. Stinson allegedly "complained 'this is only half of what I usually get.'" *Id.* at 3, ¶ 12. In response to Mr. Stinson's complaint, Dr. Doe 1 allegedly "became enraged, and . . . lunged at [Mr. Stinson], smacking and pulling at [Mr. Stinson's] hand, trying to physically get back the prescription." *Id.* at 3, ¶ 13. A nurse allegedly called for security. *Id*. at 3, ¶ 14. Security Guards Doe 2 and Doe 3 allegedly responded to the scene. *Id.*

Security Guard Doe 2 allegedly wrapped his arms around Mr. Stinson's neck and began to choke Mr. Stinson. *Id*. at 3–4, ¶ 15. Security Guard Doe 3 allegedly punched Mr. Stinson repeatedly in the face as Security Guard Doe 2 allegedly continued to place Mr. Stinson in a "lethal choke hold." *Id.* at 4, ¶ 16. Security Guard Doe 4 allegedly arrived at the scene and "used all his body weight to slam [Mr. Stinson's] head into the ground" repeatedly and screamed, "'yeah remember me.'" *Id*. at 4, ¶ 17. As Security Guards Doe 2, Doe 3, and Doe 4 allegedly "slammed" Mr. Stinson into the hallway, an emergency medical technician allegedly shouted and

directed them to stop attacking Mr. Stinson. *Id.* at 4, ¶ 18. Security Guards Doe 2, Doe 3, and

Doe 4 allegedly choked and restrained Mr. Stinson on the floor of the hallway for ten minutes

until Police Officer Doe 5 arrived at the scene. *Id.* at 4, ¶ 19.

      After his arrival, Police Officer Doe 5 allegedly handcuffed Mr. Stinson to a hospital bed

and questioned him regarding the incident. *Id*. at 4–5, ¶¶ 20-21. Police Officer Doe 5 allegedly

informed Mr. Stinson that he had watched the security video footage of the incident and that he

had not observed Mr. Stinson hit anyone. *Id.* at 5, ¶ 22. Police Officer Doe 5 allegedly also

remarked that one of the security guards had stated previously working as a correctional officer

at a time when Mr. Stinson was confined in a Connecticut prison facility and that Mr. Stinson's

complaints had gotten him into trouble. *Id.*

      Mr. Stinson allegedly informed several nurses that he was dizzy, nauseous, and had a

severe headache. *Id*. at 5, ¶ 23. Dr. Doe 1 allegedly stated that Mr. Stinson was fine. *Id.* Neither

Dr. Doe 1 nor the nurses allegedly provided Mr. Stinson with medical care despite the "large,

visible contusions on his forehead." *Id*. at 5, ¶ 24.

      Police Officer Doe 5 allegedly placed Mr. Stinson under arrest for assault and transported

him to the Congress Street Police Station in Bridgeport. *Id*. at 5, ¶ 25; at 8–9, ¶ 39. After arriving

at the station, Mr. Stinson allegedly asked Police Officer Doe 5 to take him to another hospital

for treatment of the injuries that he had suffered during his motor vehicle accident on March 17,

2018 and for the injuries that he had incurred during the assault at Saint Vincent's Hospital

earlier that day. *Id*. at 5–6, ¶ 26. Police Officer Doe 5 allegedly denied Mr. Stinson's requests for

medical treatment. *Id*. at 6, ¶ 27. At some point before or during the morning of March 20, 2018,

Bridgeport Police Department officials allegedly released Mr. Stinson from custody. *Id*. at 6, ¶ 28; Ex. B to Compl., ECF No. 1-1 (May 21, 2020) ("Ex. B").

At approximately 7:00 a.m. on March 20, 2018, Mr. Stinson allegedly arrived to the emergency room at Bridgeport Hospital in Bridgeport, Connecticut for treatment of injuries to his head, back, and neck. Compl. at 6, ¶ 28; Ex. B at 3. During his visit, Mr. Stinson allegedly underwent x-rays of his lumbar spine and a CT of his head and neck. Compl. at 6, ¶ 30; Ex. B at 12, 15–18. A physician allegedly prescribed pain medication and muscle relaxants and discharged Mr. Stinson at approximately 9:30 a.m. Compl. at 6, ¶ 29; Ex. B at 3, 12, 15.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia*, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon

which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.    DISCUSSION

Mr. Stinson claims that Security Guard Doe 2 violated his Eighth Amendment rights by allegedly assaulting him, choking him, and slamming his head into the ground, Compl. at 7, ¶ 34;

Security Guard Doe 3 allegedly violated Mr. Stinson's Eighth Amendment rights by assaulting him, punching him, and slamming his head into the ground, *id*. at 7–8, ¶ 35; Security Guard Doe 4 allegedly violated his Eighth Amendment rights by assaulting him and slamming his head into the ground, *id*. at 8, ¶ 37, and also allegedly violated his First Amendment rights by assaulting him in retaliation for complaints that he made when John Doe 4 worked as a correctional officer for the Department of Correction, *id*. at 8, ¶ 36; Dr. Doe 1 allegedly violated Mr. Stinson's Eighth Amendment rights by refusing to treat injuries that he had suffered due to a motor vehicle accident, by assaulting him, and by failing to protect him from assault by Security Guards Doe 2, Doe 3, and Doe 4, *id*. at 6–7, ¶¶ 31–32; Police Officer Doe 5 allegedly violated his Fourth Amendment rights by falsely arresting him, *id*. at 8–9, ¶ 39, and allegedly violated his Eighth Amendment rights by denying him medical attention during his confinement at the police station after his arrest, *id*. at 8, ¶ 38.

Mr. Stinson alleges that Bridgeport Police Department is liable as a municipality, *id*. at 9, ¶ 40, and St. Vincent's Hospital has a custom, policy, and practice of allowing its security guards to assault and injure patients, *id*. at 9, ¶ 41. For relief, Mr. Stinson seeks compensatory and punitive damages. *Id.* at 10.

The Court will address the claims against the various Defendants in turn.

### A.    Dr. John Doe 1 and Security Guards John Doe 2, Doe 3, and Doe 4

Section 1983 of Title 42 of United States Code creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of federally or constitutionally protected rights. *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). To state a claim for relief under § 1983, a plaintiff must allege that: (1) the defendant "deprived [him or

6

her] of a right secured by the Constitution or laws of the United States," and (2) the defendant "committed [the deprivation] under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Thus, state action is a prerequisite to a section 1983 action.

The Supreme Court has held that "state action may be found . . . only if[] there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison, Co.*, 419 U.S. 345, 351 (1974)). A plaintiff may demonstrate that the conduct of a "nominally private entity" constitutes state action under section 1983 in three ways: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood*, 531 U.S. at 296).

Mr. Stinson has failed to allege any facts to suggest that St. Vincent's Hospital, Dr. John Doe 1, Hospital Security Guard John Doe 2, Hospital Security Guard John Doe 3, or Hospital Security Guard John Doe 4 engaged in conduct that constitutes state action under § 1983. The Second Circuit and district courts in the Second Circuit have consistently held that private hospitals do not act under color of state law for § 1983 purposes. *See, e.g.*, *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) (summary order) ("[P]rivate actors and institutions, such as . . . hospitals . . . are generally not proper § 1983 defendants because they do not act

under color of state law. . . . [and] the presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's action into state action.") (internal citation omitted); *Kia P. v. McIntyre*, 235 F.3d 749, 755–57 (2d Cir. 2000) (holding that a private hospital was not a state or municipal facility and thus was not liable under § 1983, insofar as it was acting "as a private actor providing medical care"); *Febres v. Yale New Haven Hosp.*, No. 19-CV-1195 (KAD), 2019 WL 7050076, at *2–*3 (D. Conn. Dec. 23, 2019) (granting motion to dismiss claims against Yale New Haven Hospital and physicians employed at the hospital because defendants were "private actors not subject to Section 1983 liability"); *Goonewardena v. N. Shore Long Island Jewish Health Sys.*, No. 11-CV-2456 (MKB), 2014 WL 1271197, at *11 n.14 (E.D.N.Y. Mar. 26, 2014) (finding that, because the defendant was a private hospital and the plaintiff failed to plead any facts suggesting that the hospital acted in concert with state actors, the hospital could not be a state actor under § 1983), *aff'd* 597 F. App'x 19 (2d Cir. 2015); *Rose v. City of Waterbury*, Civil Action No. 3:12cv291 (VLB), 2013 WL 1187049, at *5–*6 (D. Conn. Mar. 21, 2013) (claims against St. Mary's Hospital dismissed because plaintiff failed to allege that the hospital and the City of Waterbury police officers "were engaged in joint activity" or that there was such a close nexus between the state and the challenged action that "the actions of the Hospital [could be] fairly attribute[ed] to the state").

Dr. John Doe 5 was a private emergency room physician who was working at St. Vincent's Hospital on March 18, 2018, when Mr. Stinson sought treatment for injuries that he had sustained in a car motor vehicle accident. The John Doe security guards were employed by St. Vincent's Hospital and were working on March 18, 2018.

Mr. Stinson asserts no facts to suggest that Dr. John Doe 1 was a state actor or that the

John Doe security guards were state actors. Nor are there allegations that either the actions of Dr.

Doe 1 or the actions of the John Doe security guards meet the requirements of the public

function test, the close nexus test, or the compulsion test for determining when private conduct

can be attributed to the state. *See, e.g.*, *Wilson v. Agustino*, No. 3:12-CV-1554 (VLB), 2013 WL

331255, at *1–*3 (D. Conn. Jan. 28, 2013) (dismissing a claim against a Saint Francis Hospital

emergency room physician who treated plaintiff after his arrest by Hartford Police Officers

because no facts were asserted to show that the conduct of the private physician could be

attributed to the State of Connecticut) (collecting cases); *Jouthe v. City of New York*, No. 05-CV-

1374 (NGG) (VVP), 2009 WL 701110, at *20 (E.D.N.Y. Mar. 10, 2009) (concluding that the

plaintiff failed to offer evidence that a private security guard employed by Long Island Jewish

Medical Center was a state actor subject to liability under § 1983 because no facts suggested that

the security guard was a designated "safety officer" or "special policeman" under New York

law) (collecting cases).

Mr. Stinson mentions that Security Guard Doe 4 formerly worked as a correctional

officer for the Department of Correction. There are no facts from which it could be inferred,

however, that on March 18, 2018, Security Guard Doe 4 was employed by the Department of

Correction or in any other capacity by the State of Connecticut. Rather, Mr. Stinson clearly states

that Security Guard Doe 4 was employed as a security guard at St. Vincent's Hospital. Compl. at

2, ¶ 7.

Because Mr. Stinson has failed to allege that the actions of St. Vincent's Hospital, Dr.

John Doe 1, Security Guard John Doe 2, Security Guard John Doe 3, or Security Guard John

Doe 4 on March 18, 2018 could be fairly attributed to the State of Connecticut, he has failed to

9

plausibly assert a claim of a violation of his federal constitutional rights under § 1983.

Accordingly, the claims asserted under the First and Eighth Amendments against these Defendants will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B.     Bridgeport Police Department

Mr. Stinson asserts a claim of municipal liability against the Bridgeport Police Department. Although the Supreme Court has held that a municipality is "to be included among those persons to whom § 1983 applies," *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department is not a municipality. Rather, a police department "is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function." *Reed v. Hartford Police Dep't*, No. 3:03-CV-2147 (SRU), 2004 WL 813028, at *2 (D. Conn, Apr. 6, 2004) (internal citation omitted). Because a municipal police department is not an independent governmental entity, it is not considered to be a person under § 1983. *Id.* ("Other courts addressing this issue concur that a municipal police department is not a 'person' within the meaning of section 1983 and not subject to suit.") (collecting cases); *see also Rose*, 2013 WL 1187049, at *9 (noting that courts within Connecticut have determined that state statutes do not include "provision[s] establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued . . . . [r]ather, . . . it is the municipality itself which possesses the capacity to sue and be sued") (internal citation and quotation marks omitted).

Accordingly, all federal claims asserted against the Bridgeport Police Department are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C.     Police Officer Doe 5 – Individual Capacity Claims

Mr. Stinson contends that Police Officer Doe 5 violated his federal constitutional rights by falsely arresting him on an assault charge on March 18, 2018, and by refusing to facilitate the provision of medical treatment to him during his confinement at the police station until his release at some point prior to the morning of March 20, 2018.

The Court will address these claims of false arrest and the denial of medical treatment in turn.

### 1.    The False Arrest Claim

An arrest by a law enforcement official constitutes a seizure under the Fourth Amendment and is not reasonable unless it is based on probable cause to believe that the individual has committed a crime. *Dunaway v. New York*, 442 U.S. 200, 213 (1979). Probable cause exists to arrest an individual without a warrant if "the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)).

False arrest claims brought under section 1983 as violations of the Fourth Amendment's right "to be free from unreasonable seizures, are substantially the same as claims for false arrest . . . under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal citations and quotation marks omitted). In a § 1983 action, the elements of claims for false arrest are controlled by state law. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004) ("In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred."). Connecticut law defines false arrest or false imprisonment as "the

unlawful restraint by one person of the physical liberty of another." *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (internal citation and quotation marks omitted). "Connecticut law places the burden of proving an unlawful arrest [and imprisonment] on the plaintiff." *Id.* at 203. As such, "the overall burden of proving the absence of probable cause" for the arrest also falls on the plaintiff. *Davis*, 364 F.3d at 433. A plausible false arrest or false imprisonment claim under Connecticut law also requires that the underlying charges for which the plaintiff was arrested to have terminated in his or her favor. *See Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (summary order) (noting favorable termination is an element of a § 1983 claim "sounding in false imprisonment or false arrest" under Connecticut law) (citing *Roesch v. Otarola*, 980 F.2d 850, 853–54 (2d Cir. 1992)).

Mr. Stinson alleges that Police Officer Doe 5 arrested him for assault. He contends that there was no probable cause to support the arrest because Police Officer Doe 5 viewed the video footage of the incident and did not observe him hitting anyone at St. Vincent's Hospital. The State of Connecticut Judicial Branch website reflects that a Bridgeport Police Officer arrested Mr. Stinson on March 18, 2018 on the charge of assault of public safety, emergency medical, public transit, or health care personnel in violation of Connecticut General Statutes § 53a-167c. *See Criminal/Motor Vehicle Conviction Case Detail*, State of Conn. Jud. Branch, https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=f5f7560e-763c-4d81-b349-447f6e27ea41 (last visited June 1, 2022). On March 25, 2019, a judge in the Connecticut Superior Court for the Judicial District of Fairfield at Bridgeport found Mr. Stinson guilty, following his plea of *nolo contendere*, on the charge of having assaulted a public safety, emergency medical, public transit or health care worker, and sentenced him to one year of

imprisonment. *See id.*

Because the criminal assault charge arising from Mr. Stinson's arrest by Police Officer Doe 5 on March 18, 2018 did not terminate in his favor, his Fourth Amendment false arrest claim is not plausible. *See, e.g.*, *Jackson on Behalf of Z.J. v. City of Middletown*, No. 3:11-CV-00725 (JAM), 2017 WL 2218304, at *7–8 (D. Conn. May 19, 2017) (concluding that the plaintiffs' false arrest claims failed due to "lack of favorable termination to the extent that favorable termination is an element of a claim for false arrest under Connecticut law. . . . [One of the plaintiff's] charges did not terminate in his favor because he pled *nolo contendere* to one charge, and the others were *nolled.*") (citing *Miles*, 445 F. App'x. 379; *Azana v. City of West Haven*, Civil No. 3:10cv883(JBA), 2012 WL 264559, at *7–*8 (D. Conn. Jan. 27, 2012) (no favorable termination where plea of *nolo contendere*); *Charles v. Johnson*, No. 3:13cv00218(MPS), 2015 WL 4509389, at *2 (D. Conn. 2015) (same)).

Accordingly, the Fourth Amendment false arrest claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 2.    The Denial of Medical Treatment Claim

As an initial matter, the Eighth Amendment is applicable to sentenced inmates and not to arrestees or pretrial detainees. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (distinguishing between pretrial detainee's claims, which are brought under the Fourteenth Amendment, and post-conviction detainee's claims, which are brought under the Eighth Amendment); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("Because there had been no formal adjudication of guilt against Kivlin at the time he required medical care, the Eighth Amendment has no application. The Due Process Clause [of the Fourteenth Amendment],

13

however, does require the responsible government or governmental agency to provide medical

care to persons, such as Kivlin, who have been injured while being apprehended by the police.");

*Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that the Court of Appeals properly relied

on Due Process Clause rather than the Cruel and Unusual Punishment Clause of the

Eighth Amendment when evaluating pretrial detainees claims). Therefore, Mr. Stinson's

Eighth Amendment claim asserted against Police Officer Doe 5 is dismissed. *See* 28 U.S.C.

1915A(b)(1).

Courts in the Second Circuit have applied standards under both the Fourth and

the Fourteenth Amendment to claims of denial of medical treatment by pre-arraignment

arrestees. *Compare Goodwin v. Kennedy*, No. CV 13-1774(SJF)(AKT), 2015 WL 1040663, at *7

(E.D.N.Y. Mar. 10, 2015) (applying the deliberate indifference standard of the Due Process

Clause of the Fourteenth Amendment to arrestees' denial of medical treatment claims), *with*

*Lewis v. Clarkstown Police Dep't*, No. 11 CIV. 2487(ER), 2014 WL 6883468, at *5–*6

(S.D.N.Y. Dec. 8, 2014) (applying the Fourth Amendment standard to arrestee's denial

of medical treatment claim). The Second Circuit has recently observed, however, that such pre-

arraignment conditions of confinement claims should be treated as arising under the Fourteenth

Amendment. *See Shakir v. Stankye*, 805 F. App'x 35, 40 (2d Cir. 2020) (summary order) ("[W]e

have treated even pre-arraignment conditions of confinement claims as arising under

the Fourteenth Amendment." (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A

pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due

Process Clause of the Fourteenth Amendment . . . ."), and *Weyant v. Okst*, 101 F.3d 845, 856–57

(analyzing a pre-arraignment arrestee's denial of medical treatment claim under the Fourteenth

14

Amendment standard))).

In *Darnell*, the Second Circuit considered the Fourteenth Amendment due process claims of twenty individuals who had been arrested and "subjected to appalling conditions of confinement while held *pre-arraignment* at Brooklyn Central Booking." 849 F.3d at 21 (emphasis added). The court held that to state a claim for allegedly unconstitutional conditions of confinement under the Fourteenth Amendment, a detainee must meet two prongs. *Id.* at 29. First, a detainee must allege that objectively "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal citations and quotation marks omitted). Under this prong, a detainee may not be deprived of basic human needs such as "food, clothing, shelter, medical care, or reasonable safety." *Id.* (internal citation omitted).

Under the second prong, also called the "*mens rea*" prong, a detainee must assert either that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Negligent conduct by prison or police officials, however, does not meet the *mens rea* prong of the Fourteenth Amendment standard. *See id.* at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.").

Mr. Stinson alleges that, during his confinement at the Bridgeport Police Department, Police Officer Doe 5 denied his requests for medical attention, and made no effort to facilitate the provision of medical treatment for his injuries in violation of his Eighth Amendment rights.

Mr. Stinson alleges that he suffered contusions to his face and experienced dizziness,

nausea, and a severe headache after security guards punched him in the face and repeatedly banged his head on the floor. The symptoms experienced by Mr. Stinson as well as the visible contusions to his face, and the possibility that he may have experienced a concussion when he struggled with the hospital security guards, suggest that, during his confinement at the Bridgeport Police Department, Mr. Stinson suffered from a sufficiently serious medical condition or conditions requiring assessment and/or treatment. *See id.* at 30 (establishing that a detainee may not be deprived of basic human needs such as "food, clothing, shelter, medical care, or reasonable safety" (internal citation omitted)); *see also Harris v. City of New York*, 15-CV-6341 (NG) (JO), 2018 WL 1997974, at *5 (E.D.N.Y. Apr. 27, 2018) (stating that concussions are "serious medical injur[ies]"). Thus, Mr. Stinson has met the first prong of the Fourteenth Amendment standard.

Mr. Stinson alleges that, before transporting him to the police station, Police Officer Doe 5 viewed the video footage of the excessive force used against him by the security guards at Saint Vincent's Hospital and that Police Officer Doe 5 was present when medical staff members at the hospital refused to evaluate him or provide him with medical treatment after the use of force. Furthermore, Mr. Stinson made Police Officer Doe 5 aware of his symptoms after he arrived at the Bridgeport Police Department. Despite this information, Police Officer Doe 5 allegedly refused to transport Mr. Stinson to another medical facility or to arrange for medical treatment to be provided to him at the police department.

At this stage of the case, these allegations are sufficient to meet the second prong of the Fourteenth Amendment standard set forth in *Darnell*.

Accordingly, Mr. Stinson's Fourteenth Amendment claim, that Police Officer Doe 5 was

deliberately or recklessly indifferent to Mr. Stinson's injuries and need for medical treatment during his confinement at the Bridgeport Police Department, will proceed.

### D.      Police Officer Doe 5 – Official Capacity Claims

It is unclear whether Mr. Stinson intended to sue Police Officer Doe 5 in his official capacity as well as his individual capacity. In view of his allegation that Defendant Bridgeport Police Department had engaged in an unlawful municipal practice or policy of denying medical treatment to arrestees, the Court liberally construes the Complaint to assert a Fourteenth Amendment deliberate/reckless indifference to medical needs claim against Police Officer Doe 5 in his official capacity. Compl. at 9. Any claim against a municipal official or employee in his official capacity is considered to be a claim against the municipality. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991).

"In order to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91). The fifth element reflects the notion that "a municipality cannot be made liable under § 1983 for acts of its employees by application of the doctrine of *respondeat superior.*" *Id*. at 36 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (internal quotation marks omitted)). A municipality may be "held liable if a plaintiff proves the municipality violated a federally protected right through (1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority." *Zherka v. DiFiore,* 412 F. App'x. 345, 348 (2d

17

Cir. 2011) (citing *Monell,* 436 U.S. at 694).

Mr. Stinson alleges that the Bridgeport Police Department has a "long standing policy and practice of denying detainees medical attention." He offers no facts to support the existence of such a policy or practice. Rather, he describes an incident, involving Police Officer Doe 5's alleged refusal to facilitate the provision of medical treatment for his injuries while in police custody, which appears to be an isolated one. Mr. Stinson's conclusory statement regarding a "long standing policy and practice of denying detainees medical attention" is insufficient to demonstrate that the Department had implemented an unconstitutional policy or custom at the time of his arrest and confinement at the Bridgeport Police Department in March 2018. *See, e.g.*, *Montero v. City of Yonkers, New York*, 890 F.3d 386, 403–04 (2d Cir. 2018) ("'[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'") (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993)).

Accordingly, the Fourteenth Amendment claim of deliberate or reckless indifference to medical needs asserted against Police Officer Doe 5 in his official capacity will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### ORDERS

The Court enters the following orders:

(1)     The claims asserted against the Bridgeport Police Department, the First and Eighth Amendment claims asserted against Saint Vincent's Hospital, Dr. John Doe 1, Security Guard John Doe 2, Security Guard John Doe 3, and Security Guard John Doe 4, the Fourth Amendment false arrest claim asserted against Police Officer Doe 5, the Eighth Amendment

claim asserted against Police Officer Doe 5, and the Fourteenth Amendment claim of deliberate or reckless indifference to medical needs asserted against Police Officer Doe 5 in his official capacity are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The Court will permit the Fourteenth Amendment claim of deliberate or reckless indifference to medical needs to proceed against Police Officer John Doe 5 in his individual capacity.

(2)     The Court informs Mr. Stinson that the Clerk cannot effect service of the complaint on Defendant Bridgeport Police Officer John Doe 5 in his individual capacity because Mr. Stinson has not provided the Court with a first or last name for this Doe defendant. Mr. Stinson will have until **September 9, 2022** to discover the first and last name of Police Officer John Doe 5 and to file a notice with the Clerk indicating the first and last name of this Doe Police Officer. The Court will dismiss the claim against Defendant Bridgeport Police Officer Doe 5 if Mr. Stinson does not provide a written notice indicating the Defendant's first and last name by **September 9, 2022**.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of June, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE